**HELVERING, Commissioner of Internal Revenue, v. COMMUNITY BOND & MORTGAGE CORPORATION.**

**No. 79.**

Circuit Court of Appeals, Second Circuit.

Jan. 7, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John G. Remey, Sp. Assts. to Atty. Gen., for petitioner.

John Hutchinson (Tilson, Frodel, Stanley & McCuen, Alfred C. Frodel, and Dean Hill Stanley, all of Washington, D. C., J. Gregory Lynch, of Waterbury, Conn., of counsel), for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The respondent is a Connecticut corporation dealing in second mortgage loans on real estate. Burns & Steta, Inc., a corporation, on August 20, 1925, entered into an agreement with the respondent, whereby it became its exclusive selling agent of the shares of the respondent's stock. During the year, the arrangement proved harmful and embarrassing to the respondent because of the sales methods used by the agent. Concluding that its reputation in the community was impaired, that business was diverted, and its success endangered by continuation of this agency, it decided to end it by purchasing the stock of the agency thus being enabled to terminate the contract of agency. Therefore, on November 11, 1926, the respondent's directors voted to purchase the contract for a sum not to exceed $50,000. But such purchase was not directly made, and, on December 1, 1926, the respondent purchased the outstanding capital stock for $30,000. At once it returned the stock to the treasury, from whence it was reissued to dummy stockholders who voted to cancel the stock-selling contract between the agency and the respondent. The agreement was canceled December 1, 1926, and the directors of the Burns & Steta, Inc., were empowered to dissolve the corporation. Dissolution followed, a preliminary certificate being filed with the Secretary of State of Connecticut December 29, 1926, and a final certificate August 8,

1927. All the liabilities of the selling agency were assumed by John Steta, and he received, in consideration therefor, all the assets of that corporation except the agency contract in question. The respondent received no cash consideration. When the stock was returned to the treasury, no dividends were paid, liquidating or otherwise.

In its income tax return for 1926, the respondent deducted $30,000 as a loss with a resulting net loss for that year of $15,-068.08; in 1927 it reported as a deduction its claimed net loss of $15,068.08 from the preceding year. Revenue Act 1926, c. 27, §§ 206 (a) (1), (b), 234 (a) (1, 4), (44 Stat. 9, 17, 41, 26 USCA §§ 937 (a) (1), (b), 986 (a) (1, 4). Because of the disallowance of this item, deficiency taxes for 1926 and 1927 were assessed by the petitioner. The Board of Tax Appeals sustained the respondent. 27 B. T. A. 480. This petition to review is pursuant to the provisions of the Revenue Act of 1926, c. 27, 44 Stat. 9, 109, 110, §§ 1002, 1003 (26 USCA §§ 1225, 1226), and section 1001, as amended by section 1101 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 286 (26 USCA § 1224 and note).

It is not denied that the contract of agency referred to impaired the respondent's standing and reputation in business, and, as a consequence, that business was diverted by reason of the operations of Burns & Steta, Inc. As a business necessity, threatened with a continuation of loss, the respondent secured a cancellation of its contract of agency in the manner above described. The Board's finding to this effect was sustained by undisputed evidence. It is not an unusual occurrence of business for a business enterprise, burdened with an unprofitable contract, to secure its cancellation by payment of money, and it is difficult to see why an expense thus incurred is not an "ordinary and necessary expense according to the ways of conduct and the forms of speech prevailing in the business world." Welch v. Helvering, 290 U. S. 111, 54 S. Ct. 8, 9, 78 L. Ed. 212. The payment thus made was in order to avoid loss of business, not to relieve itself of the payment of commissions for the sale of its capital stock.

Fees paid by an individual in defending a suit for an accounting brought against one by his former partner were held to be an ordinary and necessary expense in carrying on the taxpayers' trade or business, and as such deductible from his gross income. Kornhauser v. United States, 276 U. S. 145, 48 S. Ct. 219, 72 L. Ed. 505. Where a business firm, in order to avoid bankruptcy, effected a compromise with creditors, paid 50 cents on the dollar, and was released of all further claims, but thereby had its credit destroyed and was compelled to make its further purchases for cash, and, in order to restore its credit, voluntarily paid its former creditors the amounts which were relinquished by them in compromise, the taxpayer was permitted to deduct the sums so paid as necessary expenses of business. A. Harris & Co. v. Lucas (C. C. A.) 48 F.(2d) 187.

The money paid in the instant case was to save the reputation of the respondent, to make possible its future earnings. In Welch v. Helvering, supra, the taxpayer after bankruptcy of the corporation, in which he was interested, and its discharge from debt, voluntarily paid the corporation's debts in order to solidify his credit and standing. The Supreme Court held this to be a capital outlay and not deductible by him. It was found that the payments were made for the purpose of establishing the taxpayer's good will and were therefore a capital outlay. The effort of the taxpayer in the Welch Case was to impress the community with his characteristics for honesty and fair dealing and thereby establish a degree of morality for his business. In the instant case, the taxpayer's reputation was being injured by the conduct of its agent, and its primary motive in seeking the cancellation of the contract was to prevent the loss of earnings. Its contract with the agency proved to be unprofitable. This we think was an expenditure ordinary and necessary in carrying on the business, and deductible from the respondent's gross income.

Determination affirmed.